Barbara NASH, Appellant,

HENNEPIN COUNTY, Respondent,

v.

Bruce WOLLAN, Respondent,

Kevin GOODNO, Commissioner of
Human Services, Respondent.

No. C6–02–1453.

Court of Appeals of Minnesota.

Feb. 18, 2003.

Thomas Bennett Wilson III, Gayle Gaumer, Edina, MN, for appellant.

Amy Klobuchar, Hennepin County Attorney, John L. Kirwin, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County.

Michael Hatch, Attorney General, Kathy Meade Hebert, Assistant Attorney General, St. Paul, MN, for respondent Commissioner of Human Services.

Stephen D. Radtke, Bloomington, MN, for respondent Wollan.

Considered and decided by
SHUMAKER, Presiding Judge,
LANSING, Judge, and MINGE, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Respondent Bruce Wollan was committed for an indeterminate period to the state security hospital in 1981 as mentally ill and dangerous and has been a patient there since that time. In December 2000, Wollan petitioned for a transfer to an open hospital, and a special review board reviewed the petition. The special review board recommended approval, and the commissioner ordered Wollan's transfer to an open hospital.

Hennepin County, as the county of Wollan's commitment, and appellant Barbara Nash, Wollan's sister and victim of Wollan's assault, filed separate petitions with the judicial appeal panel for rehearing and reconsideration of the commissioner's transfer order. Nash also moved to require Wollan to submit to an adverse psychological examination. The commissioner moved to dismiss Nash's petition and motion on the ground that she is not a party to the proceeding and therefore lacks standing to seek relief. Wollan also moved to dismiss Nash's petition and motion.

After hearing arguments, the judicial appeal panel ruled that Nash is not a party

to the proceeding under the clear and unambiguous language of the controlling statute and granted the commissioner's motion. Nash appeals this ruling, contending that she is a party under the Minnesota Commitment and Treatment Act, Minn.Stat. ch. 253B, to proceedings involving Wollan.

Because the plain language of the controlling statute does not grant party status to interested persons other than the committed individual and the county attorney of the county of commitment, we affirm.

## FACTS

Respondent Bruce Carlton Wollan has a long history of substance abuse, mental illness, violence, and institutional commitments. He was first committed to a state hospital as mentally ill in 1969. During a provisional discharge from that hospital in 1971, Wollan assaulted his sister, appellant Barbara Nash, with a meat cleaver and was sent to prison. The prison granted Wollan a medical parole to the state security hospital, and, while on parole in 1977, he bit off the ear of a guest at a friend's party. In 1978, Wollan beat his mother repeatedly with a fireplace poker and then stabbed her to death with a knife. He was tried for murder, found not guilty by reason of insanity, and in 1981 committed for an indeterminate period to the state security hospital as mentally ill and dangerous. He has been a patient there ever since.

In 1982, the state security hospital considered issuing passes that would allow Wollan to leave the hospital grounds. Hennepin County, as the county of commitment, opposed the issuance of passes to Wollan. After a hearing, the district court concluded that passes could not be issued without the prior approval of a special review board. The supreme court later reversed that ruling. *Hennepin County v. Levine*, 345 N.W.2d 217, 218 (Minn.1984).

But in 1984, the legislature amended the applicable law to provide that an "interested person" may request a review by the special review board before a committed patient is placed on pass-eligible status. 1984 Minn. Laws ch. 623, § 6.

In 1985, Nash brought a declaratory judgment action to determine her right to oppose the placement of Wollan on pass-eligible status. In its order and memorandum in that action, the district court analogized Nash's status to that of "a plaintiff in a civil action or a petitioner in an equitable matter" and concluded that she had a right at any review hearing to testify, call witnesses, cross-examine witnesses, and to present evidence, and that she also had a right to examine medical records. The Minnesota Department of Human Services and Wollan jointly appealed.

On appeal, this court held that Nash was an interested person in the matter of the proposal to change Wollan's medical status to that of pass-eligible and that Nash had a right to participate in any review hearing. *In re Wollan*, 390 N.W.2d 839, 843 (Minn.App.1986). This court further held that the district court has discretion to disclose to an interested person private medical data so that the person can present objections to a patient's status change. *Id.*

In December 2000, Wollan petitioned for a transfer from the state security hospital to an open hospital. As required by Minn. Stat. § 253B.18, subd. 5(c) (2000), a special review board considered the petition. Nash received notice of a hearing before that board and she participated in the hearing. The board recommended approval of the transfer and, on December 31, 2001, the commissioner ordered Wollan's transfer to an open hospital.

Nash and Hennepin County filed with the judicial appeal panel separate petitions

for rehearing and reconsideration of the commissioner's transfer order. Nash also moved for an order requiring Wollan to undergo an adverse psychological examination by a psychologist Nash had chosen. The commissioner moved to dismiss Nash's petition and motion on the ground that she is not a party to the proceedings and thus lacks standing to seek any relief in the matter. Wollan moved to dismiss Nash's petition and motion because of an alleged time-limit violation.

The appeal panel heard arguments and, on June 21, 2002, granted the commissioner's motion to dismiss and denied Wollan's motion. The panel acknowledged that Nash is an "interested person," but ruled that she does not enjoy "party" status under the applicable law, Minn.Stat. § 253B.19, subd. 2 (2002):

> The statute is clear and unambiguous. It does not confer party status upon anyone else other than those specified. If this Court were to grant Ms. Nash "party" status in this proceeding, it would clearly be a judicial expansion of the law.
>
> While the court appreciates Ms. Nash's desire to participate fully in these proceedings, it would be contrary to the law to allow her to do so as a "party." As an interested person she can clearly attend and participate in these proceedings in support of Hennepin County's petition for rehearing and reconsideration.

Contending that the courts of this state "acknowledged her standing as a party in 1985 and 1986," Nash brings this appeal.

## ISSUE

Does an interested person have standing under section 253B.19 of the Minnesota Commitment and Treatment Act[1] to petition the judicial appeal panel for rehearing and reconsideration of a commissioner of human services' order to transfer a mentally ill and dangerous patient to an open hospital?

## ANALYSIS

█ We are not called upon in this appeal to decide the substantive issues of Wollan's mental illness or dangerousness, or of the propriety of his transfer to an open hospital. The sole, narrow question presented to us is whether Nash is entitled to participate as a party to review proceedings without having acquired that status through formal intervention.

Nash argues that (a) because Wollan has injured her in the past and has threatened her with future harm, she has standing to seek relief; and (b) that previous court decisions have conferred party status upon her. It is not disputed that Nash is an interested person in proceedings involving Wollan and as such is entitled to notice and an opportunity to participate.

█ We review de novo the legal issue of whether a person has standing to sue. *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). A person may have standing if the person has suffered an "injury-in-fact" or if the legislature has conferred standing by statute. *Conant v. Robins, Kaplan, Miller & Ciresi, L.L.P.,* 603 N.W.2d 143, 146 (Minn.App.1999), *review denied* (Minn. Mar. 14, 2000). Thus, if the legislature

> has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing

1. We note that the 2002 statute is the same as the statute in the year 2000, which would have been applied by the judicial appeal panel.

must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.

*Schiff v. Griffin,* 639 N.W.2d 56, 59–60 (citation omitted). And the interpretation of a statute is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

When a person under commitment to the state security hospital seeks a transfer to an open hospital, the Minnesota Commitment and Treatment Act delineates the procedures to be followed. Minn.Stat. § 253B.18, subd. 5 (2002). The procedures include a hearing before a special review board. *Id.,* subd. 5(c). Among others, interested persons are entitled to notice of the hearing and may submit relevant documentary evidence for the board's consideration. *Id.,* subd. 5(b), (c). Nash received notice; the board held several hearings; Nash submitted evidence opposing Wollan's transfer; and the board recommended approval of the transfer. The commissioner agreed with the recommendation.

Challenges to transfer orders are directed to the judicial appeal panel, which consists of three judges. Minn.Stat. § 253B.19, subd. 1 (2002). The law designates the persons who may challenge the commissioner's decision:

> The *committed person* or the *county attorney* of the county from which a patient was committed as a person who is mentally ill and dangerous to the public * * * may petition the appeal panel for a rehearing and reconsideration of a decision by the commissioner.

Minn.Stat. § 253B.19, subd. 2 (2002) (emphasis added).

Because Nash is neither the committed person nor the county attorney, the judicial appeal panel, applying Minn.Stat. § 253B.19, subd. 2, ruled that she does not have standing to petition for rehearing and reconsideration. Nash argues that, as an interested person with a significant stake in the matter, she is entitled to petition for rehearing and reconsideration, and, furthermore, she enjoys party status or its equivalent by virtue of prior court rulings.

The object of the interpretation and construction of statutory law is to ascertain and effectuate the legislature's intention. Minn.Stat. § 645.16 (2002). A reviewing court is prohibited from adding words to a statute and "cannot supply what the legislature purposely omits or inadvertently overlooks." *Ullom v. Indep. Sch. Dist. No. 112, Chaska,* 515 N.W.2d 615, 617 (Minn.App.1994). The court must give a plain reading to any statute it construes, and, when the language of the statute is clear, the court must not engage in any further construction. *Gomon v. Northland Family Physicians, Ltd.,* 645 N.W.2d 413, 416 (Minn.2002).

Minn.Stat. § 253B.19, subd. 2, is clear. The only persons who may petition the judicial appeal panel are the committed person and the county attorney. By using clear language, the legislature stated its intent to limit those entitled to file a petition. That the legislature purposely omitted interested persons from eligible petitioners is demonstrated by later reference in subdivision 2 to interested persons as being among those entitled to notice of the hearing on the petition and by the provision that only the patient, the patient's counsel, and the county attorney may present and cross-examine witnesses. Minn. Stat. § 253B.19, subd. 2. Thus the judicial appeal panel's determination that Nash is not an eligible petitioner is consistent with the plain meaning of Minn.Stat. § 253B.19, subd. 2.

Although plain meaning is the governing principle in statutory interpretation, courts will not give effect even to plain meaning if to do so would produce an absurd or unreasonable result or would depart from the purpose of the statute. *Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust,* 646 N.W.2d 546, 549 (Minn.App.2002), *review granted* (Minn. Sept. 17, 2002). The purpose of Minn.Stat. § 253B.19, subd. 2, is to provide to certain stakeholders the right to file a petition and present and examine witnesses and to provide other stakeholders with notice of the proceedings. It is within the legislature's prerogative to limit the formal participants to any legal proceeding. The application of the plain meaning of Minn.Stat. § 253B.19, subd. 2, comports with legislative intent and does not produce an absurd or unreasonable result.

Nash argues that Minn.Stat. § 253B.19, subd. 2, provides: "Any person may oppose the petition." It does so provide; but the "petition" is not, as Nash contends, Wollan's transfer petition, but rather it is the petition for rehearing and reconsideration that is the subject of the statutory section.

Finally, Nash relies on caselaw to establish her party status. But the cases she cites do not apply here because the statutes involved are different from the statute in question. For example, in *Minn. Pub. Interest Research Group v. Minn. Dep't of Labor & Indus.,* 311 Minn. 65, 249 N.W.2d 437 (1976), the Minnesota Department of Labor and Industry denied the Minnesota Public Interest Research Group (MPIRG) the opportunity to initiate a hearing challenging a newly promulgated standard. *Id.* at 73, 249 N.W.2d at 441–42. The supreme court noted that the Minnesota Occupational Safety and Health Act (the statute under review in that case) contained a specific provision setting forth the requirements for standing to seek judicial review of standards promulgated by the Minnesota Department of Labor and Industry, and that the provision gave standing to any person aggrieved by any standards promulgated by the commissioner. *Id.* The court concluded that MPIRG was an "interested person" entitled to initiate a hearing under the Minnesota Occupational Safety and Health Act and to present any pertinent data and information, that being denied the opportunity to initiate a hearing made it an aggrieved party, and that it therefore had standing under the statute. *Id.* Because the facts and statutes in *MPIRG* are not analogous to this case, *MPIRG* does not provide relevant guidance here.

In *State by Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490 (Minn.1996), the supreme court addressed the issue of whether the State of Minnesota and Blue Cross had standing under Minnesota's antitrust statute as well as consumer-protection statutes relating to consumer fraud, unlawful and deceptive trade practices, and false advertising. Again, the statutes in that case contained language completely different from the statute in the current situation. Specifically, the antitrust statutes broadly granted standing to "any person * * * injured directly or indirectly" to maintain private antitrust suits. *Id.* (citation omitted). Such broad language regarding standing does not exist in the Minnesota Commitment and Treatment Act dealing with a petition to the judicial appeal panel for a rehearing and reconsideration of a decision by the commissioner. Minn.Stat. § 253B.19, subd. 2. Because the facts and statute in *Philip Morris* are not analogous to this case, *Philip Morris* does not provide relevant guidance here.

Nash also cites the 1985 Hennepin County district court decision as having conferred upon her the status as a party to

proceedings involving Wollan. Although the district court did appear to treat Nash as the equivalent of a party, that decision has no precedential value. And our affirmance of the district court did not provide that Nash could proceed as a party. *In re Wollan,* 390 N.W.2d at 843.

We hold that a clear and proper reading of Minn.Stat. § 253B.19, subd. 2, precludes Nash as an interested person from eligibility to petition the judicial appeal panel for a rehearing and reconsideration of the commissioner's transfer decision.

■ However, Nash has a vehicle for attaining significant involvement in this matter through formal intervention under the Minnesota Rules of Civil Procedure, rule 24. Rule 24 allows a person to intervene either by right, Minn. R. Civ. P. 24.01, or by permission of the court, Minn. R. Civ. P. 24.02. Rule 24 is specifically designed to protect a nonparty from having her interests adversely affected by litigation conducted without her participation. *Erickson v. Bennett,* 409 N.W.2d 884, 887 (Minn.App.1987). Because courts encourage intervention, rule 24 is to be liberally applied. *Luthen v. Luthen,* 596 N.W.2d 278, 281 (Minn.App.1999).

■ Intervention as a matter of right requires that a party seeking intervention show that

> (1) the motion to intervene was timely; (2) an interest relating to the property or transaction that is the subject of the action; (3) as a practical matter, disposition of the action may impair or impede the party's ability to protect that interest; and (4) the party is not adequately represented by the existing parties.

*Id.* at 280–81. Permissive intervention lies within the district court's discretion and, after considering whether intervention will unduly delay or prejudice the rights of the other parties, the court may grant a request for permissive intervention when an applicant's claim or defense and the main action have a common question of law or fact. *See* Minn. R. Civ. P. 24.02; *Heller v. Schwan's Sales Enters., Inc.,* 548 N.W.2d 287, 292 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996).

Nash has a special and concrete stake in the ultimate determination and likely would qualify as a proper intervenor. Hennepin County has stated that it does not anticipate that it would object to Nash's intervention. However, because Nash has not moved for formal intervention and this issue is not otherwise before us, we make no determination at this time on the appropriateness of her intervention.

*Motion to Strike Documents*

■ After Nash filed her brief, the Commissioner of Human Services filed a motion to strike portions of Nash's appendix and corresponding references in the brief on the basis that the documents in the appendix are not in the record on appeal. The record on appeal consists of the "papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ.App. P. 110.01.

The trial court file in this case consists of the record presented before the judicial appeal panel. The documents in the appendix appearing on pages 10–13 and 34–43 are not within the record on appeal and are stricken. The direct quote on page 9 of Nash's facts that corresponds to the stricken appendix pages is also stricken from the record. However, with the exception of the direct quote, the other factual references can be independently verified from the remainder of the record on appeal and are not stricken.

## DECISION

The judicial appeal panel properly dismissed, for lack of standing under Minn.

Stat. § 253B.19 (2002), Nash's motion for reconsideration, challenging the commissioner's order to transfer Wollan to an open hospital. We grant in part the commissioner's motion to strike portions of Nash's appendix and corresponding references in the brief.

**Affirmed; motion granted in part.**