**Charles RISDALL, et al., Respondents,**

v.

**BROWN–WILBERT, INC., et al., Defendants,**

**Christopher C. Brown, et al., Appellants.**

**No. A06–1233.**

Court of Appeals of Minnesota.

July 3, 2007.

Scott D. Hillstrom, Guardian Law Group, LLC, Minneapolis, MN; and Peter A. Koller, Moss & Barnett, P.A., Minneapolis, MN, for respondents.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN; and George E. Antrim, III, Minneapolis, MN, for appellants.

Considered and decided by RANDALL, Presiding Judge; KLAPHAKE, Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.

Appellants challenge the district court's grant of summary judgment to respondents on their claim that appellant corporation sold unregistered securities in violation of Minnesota securities law, entitling respondents to rescind their purchases of appellant's stock. Because we conclude that respondents' state-law claims are preempted by federal law, we reverse and remand.

## FACTS

Appellant funeral.com was incorporated in 1999; it is "principally engaged in the development and marketing of an internet website where those with funeral needs can find information and alternatives." Its CEO, appellant Christopher C. Brown, is also the president of Brown–Wilbert, Inc., a burial-vault manufacturer.[1] In March 2000, funeral.com issued a private-placement offering memorandum (PPM1) for the sale of funeral.com stock. Respondents Charles Risdall, Len Dozier, and Mary Risdall[2] learned of the stock-purchase opportunity and received copies of PPM1 from Ted Risdall, who served on funeral.com's board of directors. In March and April 2000, respondents purchased shares of funeral.com stock under PPM1.

In May 2000, funeral.com issued a second private-placement offering memorandum (PPM2). PPM2 was posted on the Internet and mailed to a list of funeral directors until funeral.com learned that general solicitation and general advertising would prevent the offering from being exempt under Regulation D from the registration requirement of the federal Securities Act. *See* 17 C.F.R. §§ 230.501–.508 (2006) (Regulation D). The web postings were removed, and PPM2 was withdrawn before any sales were made under it. Ted Risdall stated in an affidavit presented to the district court that when he learned of the general solicitation at a May 31, 2000 board meeting, he explained that such solicitation was impermissible without registration and directed the webmaster to remove the material immediately.

The record also contains a letter dated August 14, 2000, to the Securities and Exchange Commission (SEC) from funeral.com's counsel, responding to an inquiry by the SEC regarding funeral.com's use of e-mail and websites to describe an unregistered stock offering. In the letter, funeral.com's counsel admitted that information about a private-placement offering was placed on two websites "at some point after June 1, 2000," and assured the SEC that as of August 10, 2000, the material had been removed from both websites, that no stock sales had been made under the advertised offering, and that funeral.com would ensure that no future sales were made to individuals who had requested a copy of PPM2 "through the websites."

Respondents filed suit against funeral.com in March 2003, alleging consumer fraud, negligence, securities fraud, and unjust enrichment, and seeking rescission of their stock purchases. Both parties moved for summary judgment.

Respondents moved for summary judgment on the grounds that (1) funeral.com sold unregistered securities, in violation of Minn.Stat. § 80A.08 (1998) and (2) funeral.com committed securities fraud, in

---

1. We refer to appellants collectively as "funeral.com."

2. Mary Risdall is represented in this suit by John Risdall in his capacity as personal representative of her estate.

violation of Minn.Stat. § 80A.01 (1998).[3] Respondents' claim that funeral.com sold unregistered securities was based on their contention that the alleged violations involving PPM2 affected the securities sales made under PPM1 because PPM1 and PPM2 were "integrated," or considered to be part of the same offering. Noting that funeral.com disputed that PPM1 and PPM2 should be integrated, the district court determined that its disposition of respondents' motion for summary judgment "hinge[d] on resolution of this single difference of position."

In its motion for summary judgment, funeral.com argued that respondents' claim is barred by federal securities law because the shares were sold under the exemption from registration provided by Regulation D, promulgated by the SEC. In the alternative, funeral.com argued that it is entitled to summary judgment because Minn.Stat. § 80A.15, subd. 2(h) (1998), provides an exemption from the registration requirement for stock that is sold "in reliance on" the Regulation D exemption. Further, funeral.com argued, there should be no integration of PPM1 and PPM2 because no sales were made under PPM2.

The district court concluded that PPM1 and PPM2 were integrated because they (1) were part of a single financing plan (i.e., starting funeral.com); (2) involved the same class of stock (i.e., common shares); (3) were sold "at or about the same time" (i.e., over a 5-month period); (4) both involved cash consideration; and (5) involved the same purpose (i.e., starting funeral.com). The district court determined

that funeral.com failed to comply with Regulation D, that "purported reliance" on Regulation D does not trigger federal preemption of state securities laws in the absence of "actual compliance," and that, therefore, Minn.Stat. ch. 80A is not preempted by federal securities law here.

The district court therefore concluded that funeral.com sold unregistered securities in violation of Minn.Stat. ch. 80A, granted summary judgment to respondents on that ground, and determined that respondents were entitled to rescission of their stock purchases, repayment of the purchase price with interest, costs, and attorney fees under Minn.Stat. § 80A.23, subd. 1 (1998). But the district court denied respondents' motion for summary judgment on their securities-fraud claim on the ground that the facts material to this claim were not "sufficiently undisputed." The district court also denied funeral.com's motion for summary judgment. Respondents agreed to dismiss their remaining claims against funeral.com, including the securities-fraud claim, and final judgment for respondents was entered. This appeal by funeral.com follows.

## ISSUE

When a securities offering is made pursuant to Regulation D, 17 C.F.R. §§ 230.501–.508 (2006), does federal law preempt a claim that the offering failed to meet the registration requirement of Minn. Stat. § 80A.08 (2006)?

## ANALYSIS

■ This court asks two questions when reviewing a district court's decision to

---

3. We note that respondents' complaint did not specifically allege a violation of Minn. Stat. 80A.08, which prohibits the public sale of unregistered securities. It also did not allege the fact of nonregistration. The issue of nonregistration was raised for the first time in respondents' memorandum in support of their motion for summary judgment, and fu-

neral.com then responded to the issue. We conclude that the parties have litigated this issue by consent. *See* Minn. R. Civ. P. 15.02 (providing that when a party does not raise an issue in its pleadings, the parties may litigate the issue by express or implied consent, and the district court will treat those issues as if they were raised in the pleadings).

grant summary judgment: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). No genuine issue of material fact exists when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

█ Interpretation of statutes regulating securities is a question of law, which this court reviews de novo. *See Nash v. Wollan,* 656 N.W.2d 585, 589 (Minn.App. 2003), *review denied* (Minn. Apr. 29, 2003).

Minnesota Statutes chapter 80A (2006) regulates the sale of securities.[4] Section 80A.08 provides that "[i]t is unlawful for any person to offer or sell any security in this state unless (a) it is registered under sections 80A.01 to 80A.31 or (b) the security or transaction is exempted under section 80A.15 or (c) it is a federal covered security." It is undisputed that funeral.com sold unregistered stock to respondents under PPM1, but because funeral.com did not generally advertise or generally solicit sales under PPM1 and the offering was therefore exempt from the registration requirements, those sales standing alone did not violate section 80A.08. And funeral.com asserts that because respondents' state-law claims are preempted by federal law, even if PPM1 and PPM2 are integrated, there was no violation of Minn.Stat. ch. 80A.

Under the federal Securities Act of 1933, a registration statement must be filed with the SEC before a security may be offered or sold. 15 U.S.C. § 77e (2000). But federal securities law also provides a number of exemptions from the registration requirement, including Regulation D. 17 C.F.R. §§ 230.501–.508 (2006). The National Securities Markets Improvement Act (NSMIA) preempts enforcement of state registration requirements for "covered securit[ies]," which include those sold under Regulation D. 15 U.S.C. § 77r(a), (b)(4)(D) (2000). Regulation D exempts from the registration requirement "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2) (2000); *see also id.,* § 77d(6) (providing that offers or sales solely to accredited investors are exempt from the registration requirement "if there is no advertising or public solicitation in connection with the transaction"). An issuer purporting to use the Regulation D exemption may not "offer or sell the securities by any form of general solicitation or general advertising." 17 C.F.R. § 230.502(c).

PPM1 provided:

The Shares offered hereby have not been registered under the 1933 Act or any state securities or "blue sky" laws. The Shares are being offered pursuant to exemption from registration. Such exemptions from registration provide that we may sell the Shares offered hereby only to investors who are "accredited investors" as such term is defined in Rule 501(a) of Regulation D promulgated under the 1933 Act.

Because the stock sold to respondents was offered "pursuant to" Regulation D, funeral.com asserts, "any allegation of improper registration is covered exclusively by federal law," and "[a]ny claim for failure to

---

4. Minn.Stat. §§ 80A.01–.31 have been repealed, effective August 1, 2007. 2006 Minn. Laws ch. 196, art. 1, §§ 51–52, at 91.

properly register under state law or for rescission under state law is preempted."

There appears to be no genuine dispute regarding the fact that funeral.com intended for PPM1 to be exempt from the registration requirement under Regulation D— funeral.com points to respondents' acknowledgment in their memorandum in opposition to funeral.com's motion for summary judgment that they "purchased their shares in an offering made pursuant to Rule 506 of Regulation D." But respondents argue that because PPM1 and PPM2 should be integrated into a single offering and funeral.com failed to comply with Regulation D when it publicly solicited securities sales under PPM2, PPM1 is not protected by Regulation D, so Minn.Stat. ch. 80A is not preempted by federal law here.

The parties' positions represent two sides of an issue that has produced conflicting results in securities cases: must a defendant in an action alleging a sale of unregistered securities "prove preemption by proving exemption?" *Grubka v. Web-Access Int'l, Inc.,* 445 F.Supp.2d 1259, 1269 (D.Colo.2006). Minnesota's federal district court recently concluded that "[w]hen an offering purports to be exempt under federal Regulation D, any allegation of improper registration is covered exclusively by federal law." *Pinnacle Commc'ns Int'l, Inc. v. Am. Family Mortgage Corp.,* 417 F.Supp.2d 1073, 1087 (D.Minn.2006); *see also Lillard v. Stockton,* 267 F.Supp.2d 1081, 1116 (N.D.Okla.2003); *Temple v. Gorman,* 201 F.Supp.2d 1238, 1244 (S.D.Fla.2002) (holding that when a private placement of securities purported to be exempt under Rule 506, "[r]egardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506, the securities sold to Plaintiffs are federal 'covered securities' because they were sold pursuant to those rules").

The conflicting line of authority requires that the offering actually be exempt under Regulation D by complying with its requirements before an issuer of securities may assert that federal preemption applies. *See Grubka,* 445 F.Supp.2d at 1270 ("Nowhere does the statute indicate that a security may satisfy the definition if it is *sold pursuant to* a putative exemption. If Congress had intended that an offeror's representation of exemption should suffice it could have said so, but did not. Such an intent seems unlikely, in any event; that a defendant could avoid liability under state law simply by declaiming its alleged compliance with Regulation D is an unsavory proposition and would eviscerate the statute."); *see also Brown v. Earthboard Sports USA, Inc.,* 481 F.3d 901, 910 (6th Cir.2007); *Hamby v. Clearwater Consulting Concepts, LLLP,* 428 F.Supp.2d 915, 920–21 (E.D.Ark.2006); *Buist v. Time Domain Corp.,* 926 So.2d 290, 296 (Ala.2005).

■ Although it is not binding on this court, we agree with the opinion of the Minnesota federal district court. Because federal courts are uniquely qualified to address issues of federal law, such as the availability of a Regulation D exemption, we conclude that the better view is that an offering purporting to be exempt under Regulation D is governed exclusively by federal law, and any claim under state law relating to the offering is therefore preempted. It is not genuinely disputed that PPM1 purported to be exempt under Regulation D, so it and any subsequent, integrated offerings are governed by federal law. Respondents' state-law claims are therefore preempted, and we reverse on that ground the district court's grant of summary judgment to respondents.

Even if we were to follow the conflicting line of authority and conclude that an offering must actually comply with Regulation D for federal law to preempt state-law

claims relating to the offering, we would nonetheless reverse the district court's grant of summary judgment to respondents because we conclude that funeral.com complied with Regulation D in its sale of securities to respondents.

Respondents do not assert that PPM1, standing alone, violated Regulation D's prohibition on public solicitation. Therefore, their argument that PPM1 failed to meet the requirements of Regulation D relies on their contention, with which the district court agreed, that PPM1 and PPM2 should be integrated.

Regarding integration, Regulation D provides:

(a) Integration. All sales that are part of the same Regulation D offering must meet all of the terms and conditions of Regulation D. Offers and sales that are made more than six months before the start of a Regulation D offering or are made more than six months after completion of a Regulation D offering will not be considered part of that Regulation D offering, so long as during those six month periods there are no offers or sales of securities by or for the issuer that are of the same or a similar class as those offered or sold under Regulation D, other than those offers or sales of securities under an employee benefit plan as defined in rule 405 under the Act (17 C.F.R. 230.405).

. . . .

The following factors should be considered in determining whether offers and sales should be integrated for purposes of the exemptions under Regulation D:

(a) Whether the sales are part of a single plan of financing;

(b) Whether the sales involve issuance of the same class of securities;

(c) Whether the sales have been made at or about the same time;

(d) Whether the same type of consideration is being received; and

(e) Whether the sales are made for the same general purpose.

17 C.F.R. § 230.502(a).

Funeral.com emphasizes the fact that the five-factor test refers to "sales" of securities and the fact that the SEC originally used the word "offerings" in its five-factor integration test but replaced it with "sales" when it codified Regulation D. *Compare* Non–Public Offering Exemption, Securities Act, 27 Fed.Reg. 11316, 11317 (Nov. 16, 1962) (introducing the five-factor test, using the word "offerings"), *with* 17 C.F.R. § 230.502(a) (1982) (codifying Regulation D, including the five-factor test, using the word "sales" rather than "offerings"). Because no sales were made under PPM2, funeral.com argues, PPM2 cannot be integrated with PPM1, and the district court erred in its application of the law when it concluded otherwise. Respondents address this argument in a footnote in which they claim that "[c]ourts and scholars have found no significance in the change from 'offerings' to 'sales,' as evidenced by the fact that they continue to use the word 'offerings' in discussing the current test."

■ We agree with funeral.com's argument. Such a deliberate change in the language of the SEC's integration test cannot be dismissed as having "no significance." Under the plain language of the federal regulation, an offering under which no sales are made cannot be integrated with another offering under Regulation D. And respondents do not dispute the fact that no sales were made under PPM2. We therefore conclude that PPM1 and PPM2 were not integrated, and respondents do not assert that PPM1, standing alone, violated the requirements of Regula-

tion D. Because PPM1 complies with Regulation D, respondents' state-law claims are preempted by federal law, even if we were to follow the line of cases that require defendants to prove exemption under Regulation D in order to establish federal preemption of state securities laws.

And even if respondents' claims under Minn.Stat. ch. 80A were not preempted by federal law, because we have determined that PPM1 and PPM2 should not be integrated, we also conclude that PPM1 was exempt under Minn.Stat. § 80A.15, subd. 2(h), from the registration requirement of Minn.Stat. § 80A.08. Section 80A.15, subdivision 2(h), exempts from the registration requirement

> [a]n offer or sale of securities by an issuer made in reliance on the exemptions provided by Rule 505 or 506 of Regulation D promulgated by the Securities and Exchange Commission, [17 C.F.R. §§ 230.501–.508], subject to the conditions and definitions provided by Rules 501 to 503 of Regulation D, [which include the prohibition on public solicitation], if the offer and sale also satisfies the conditions and limitations in clauses (1) to (10).
>
> . . . .
>
> (10) The determination whether offers and sales made in reliance on the exemption set forth in paragraph (h) shall be integrated with offers and sales according to other paragraphs of this subdivision shall be made according to the integration standard set forth in Rule 502 of Regulation D . . . .

Section 80A.15, subdivision 2(h)(10), incorporates the integration standard provided in Regulation D. Because we have concluded that PPM1 should not be integrated with PPM2 and because PPM1 was offered in reliance on Regulation D and otherwise complies with subdivision 2(h), PPM1 is exempt under subdivision 2(h)

from the registration requirement of section 80A.08. Therefore, even if we were to determine that respondents' claims were not preempted by federal law, we would still conclude that respondents are not entitled to judgment.

## DECISION

Because it is undisputed that funeral.com's securities under PPM1 were sold pursuant to Regulation D, the sales are governed solely by federal law, and respondents' state-law claims are preempted. We therefore reverse and remand for entry of judgment for appellants.

**Reversed and remanded.**